**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LENA ANGELELLA,

       Plaintiff,

           v.

ROBERT AVVISATO, JOHN BONITA,
JOSEPH ADAMS, STEVEN RINALDI,
and PITTSTON TOWNSHIP,

       Defendants.

CIVIL ACTION NO. 3:15-CV-00511

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are two (2) motions to dismiss Plaintiff's Complaint, which alleges sex discrimination pursuant to 42 U.S.C. § 1983 ("Section 1983"), conspiracy to discriminate based on sex pursuant to Section 1983, conspiracy to discriminate based on sex pursuant to 42 U.S.C. § 1985(3) ("Section 1985"), and intentional infliction of emotional distress ("IIED"). First, there is a Partial Motion to Dismiss filed by Defendants John Bonita, Joseph Adams,[1] Steven Rinaldi, and Pittston Township (collectively the "BART Defendants") (Doc. 15), which seeks dismissal of Plaintiff's punitive damages and conspiracy claims against Pittston Township in Counts I and III of the Complaint as well as Plaintiff's IIED claims against all of the BART Defendants in Count IV of the Complaint. This motion also requests that all factual averments prior to March 13, 2013 be stricken as time-barred. Second, there is a Motion to Dismiss filed by Defendant Robert Avvisato (Doc. 18), which seeks dismissal of all claims against him, including sex discrimination, conspiracy

---

[1]    On January 19, 2016, a Suggestion of Death Upon the Record as to Joseph Adams was filed. (Doc. 25.) Because there has been no motion to substitute Defendant Adams with the administrator of his estate as a defendant, he has been terminated as a defendant from this case and all claims against him shall be dismissed. *See* Fed. R. Civ. P. 25(a)(1) (providing that if a party dies and a motion for substitution is not made by any party or the decedent's successor or representative within ninety (90) days after service of a statement noting the death, "the action by or against the decedent must be dismissed").

to discriminate based on sex, and IIED.  For the reasons that follow, the motions will be granted in part and denied in part.

## I. Background

The facts as set forth in Plaintiff's Complaint are as follows:

Plaintiff Lena Angelella was a female police officer employed by Pittston Township (the "Township").  She has held the rank of Sergeant since 2012.  On or around December 17, 2012, the Pittston Township Supervisors appointed Defendant Robert Avvisato to Chief of Police of the Pittston Township Police Department.

On or around December 18, 2012, Plaintiff met Defendant Avvisato for the first time on the sidewalk in front of the Pittston Township Police Department.  After introducing herself, Plaintiff then accompanied Defendant Avvisato into the police station where she introduced him to the police clerk and other officers in the building.  At this time, Defendant Avvisato stated in front of Patrolman Todd Houghtlin and Plaintiff that he was hired as Chief of Police "because he has more experience" than Plaintiff.

In January 2013, Defendant Avvisato was working a day shift with Plaintiff, and began talking about why he was given the position of Chief of Police over Plaintiff.  He stated that "when a town hires a Chief outside of the department, it means there is a problem in the department, there is a broken link that needs to be fixed and the administration was not happy with the way things were being done.  It is very rare for a town to hire outside of their department, it is a clear sign there is a problem."

On or around January 24, 2013, Defendant Avvisato approached Plaintiff as she came in for her scheduled shift and said, "I feel and I have told other people that you were not ready to be Sergeant because you cannot handle the pressure and the stress."  He also informed her that the other officers in the department were "mad" at her because she was going to file a grievance about split shifts.  On or around February 10, 2013, during a phone conversation between Defendant Avvisato and Plaintiff, he informed her that "her stripes can come off at any time and she can be demoted."

2

On or around February 14, 2013, after a hostile conversation between Plaintiff and male Patrolman Steve Wengen, Patrolman Wengen pushed Plaintiff with the passenger door of his police cruiser.  Plaintiff walked away from the cruiser and called Defendant Avvisato to complain of Patrolman Wengen's insubordination to her, which included disobeying her commands and pushing her with the passenger door of his vehicle. However, Defendant Avvisato refused to discipline Patrolman Wengen.  Patrol Wengen was later promoted to full time status in December of 2014.

Also in February 2013, Defendant Avvisato implemented a new uniform policy, which mandated that only the Chief of Police could wear gold insignia on his uniform and all other ranking officers had to wear silver.  He gave all officers thirty (30) days to comply with this new policy, except for ranking officers, for whom he only gave fifteen (15) days to comply. As the only ranking officer, Plaintiff was the only officer who was only given fifteen (15) days to comply.  On or around April 9, 2013, Defendant Avvisato wrote Plaintiff up for failing to comply with this policy, specifically, for not having a silver badge.  In the spring of 2014, male Patrolman Edwards Sulima purchased a new K-9 badge for himself that was two toned silver and gold.  However, he was not directed to remove his badge, nor was he written up, despite the fact that he was neither a ranking officer nor a full time officer.

On March 7, 2013, Defendant Avvisato again wrote Plaintiff up, this time for taking too long to ask another officer who was on duty to handle a crash to which she had been dispatched.  Plaintiff was informed that she could no longer authorize another officer to "handle her cars."  She was unilaterally demoted by Defendant Avvisato and stripped of her authority as a Sergeant.

On or around April 10, 2013, Plaintiff arrived for her scheduled shift and was asked by Defendant Avvisato if she was ready to talk to him about everything.  She responded that she would like that.  Defendant Avvisato and Plaintiff discussed various things, including but not limited to the aforementioned incident with Patrolman Wengen.  Defendant Avvisato informed Plaintiff that with regard to the Patrolman Wengen incident, Defendant Avvisato was the Chief and it was none of her business what was going on.  Furthermore, he

informed her that the entire Pittston Township Police Department was against her and does not like or respect her.  As the conversation progressed, Defendant Avvisato "berated" Plaintiff and walked toward her in an "aggressive manner."  Plaintiff ended the conversation because he was upsetting her and she was experiencing chest pain, to which Defendant Avvisato responded that he was opening a criminal investigation on her.

In April 2013, Plaintiff gave Defendant Avvisato and the Pittston Township supervisors a note from Dr. Guy Fasciana, her family doctor, stating that she could not return to work due to severe anxiety. Dr. Fasciana referred Plaintiff to Dr. Matthew Berger. Plaintiff did not return to work until December 29, 2014.  In the interim, she applied for Workers' Compensation Benefits and Heart and Lung Benefits.  She attached a nine-page attachment to the Employer's Report of Occupational Disease or Injury describing the harassment she endured by Defendant Avvisato and Patrolman Wengen.  However, Defendant Bonita failed to include her attachment when he submitted the Report.  Instead, he described Plaintiff's injury as "Claimant was doing reports, when she had severe anxiety, resulting in injury."

On or around June 6, 2013, Plaintiff was informed by Defendant Pittston Township that no decision had been made regarding her Heart and Lung benefits and that she was being placed on short term disability per the terms of the collective bargaining agreement. A few days later, Plaintiff received correspondence from Defendant Township regarding a disability policy that had allegedly been purchased.  This correspondence, which indicated that the policy was through Principal Financial, stated that in order to establish a claim, Plaintiff's physician would need to complete the disability form.

Plaintiff communicated with Defendant Bonita regarding necessary paperwork to process a claim on her behalf for disability insurance that had been purchased by the Township.  She initially contacted Defendant Bonita when her paycheck was withheld in early July.  During this time, Plaintiff contacted Principal Financial and learned that no disability claim had been opened by Defendant Township.  Nonetheless, Defendant Bonita continued to harass Plaintiff over the disability form he allegedly needed.  Plaintiff again

4

contacted Principal Financial and was informed that Defendant Township was not carrying a disability policy with the company.  Defendant Bonita then contacted Plaintiff and informed her that he spoke to a representative of Hartford Insurance and they did not receive the aforementioned disability form.  When asked by Plaintiff why he was speaking to a Hartford Insurance instead of Principal Financial about the disability form, Defendant Bonita responded that they were the same company.  Plaintiff then contacted Hartford Insurance and was informed that they were not the same company.  Additionally, Plaintiff learned that Hartford's form was seven (7) pages long, while the one she previously filled out was only two (2) pages long.  Plaintiff relayed this information to Defendant Bonita, and he informed her that he would get back to her.  Plaintiff never heard back from Defendant Bonita regarding the form.  Although Defendant Bonita's mishandling of Plaintiff's disability paperwork resulted in Pittston Township withholding payment to her, he was able to handle the disability paperwork of two (2) male patrolmen and the Heart and Lungs benefit paperwork of another male patrolman without incident.

Plaintiff ultimately received the correct form directly from Hartford Insurance and upon having her doctor complete the pertinent section, she returned the form to Hartford and the Township.  On or around June 26, 2013, Plaintiff was informed that her claim for Heart and Lung Benefits had been denied.

In or around March of 2014, while Plaintiff was out on medical leave, Plaintiff received a phone call from Patrolman Houghtlin, who informed her about a conversation he recently had with Defendant Avvisato.  He conveyed to Plaintiff that Defendant Avvisato stated that he was hired by Defendants Adams and Rinaldi to harass her until she quit her job or could be fired, and that Defendant Avvisato would have meetings with the aforementioned Defendants as well as Defendant Bonita, and they would all urge him to fire her.  He also informed her that the Township Supervisors would instruct Defendant Avvisato to put Plaintiff on midnight shift because they did not want to see her.

In or around June of 2014, while Plaintiff was still out on medical leave, she received correspondence from Pittston Township sent to Defendant Avvisato, terminating him as the

5

Chief of Police.  The letter indicated that interviews were held with several full and part time officers and Defendant Avvisato was being terminated because of the work environment that existed at the police department.   Plaintiff was never contacted or interviewed by Defendant Township.  The letter outlined indirect verbal threats Defendant Avvisato made against Defendant Bonita and Patrolman Joseph Hawk.  No disciplinary action was taken against Defendant Avvisato or Patrolman Wengen when Plaintiff complained about the work environment.  Action had purportedly been taken because two (2) males had complained about Defendant Avvisato, whereas no action had been taken when Plaintiff complained.

Plaintiff further asserts that a male, Patrolman Houghtlin, was treated more favorably than she was because Pittston Township registered him for and paid for a required training while he was out on medical leave, whereas Plaintiff had to request that her training be paid for.  Defendant Township initially refused to forward payment to Lackawanna College as they had previously done on numerous occasions for her.   Shortly after Defendant Township changed its position, Plaintiff learned from Patrolman Houghtlin that while she was on sick leave, Defendant Township contacted him and informed him that he was registered for a mandatory training class.  Patrolman Houghtlin did not ask the Township to register him.

On December 12, 2014, a week before Plaintiff was scheduled to return to work and over three (3) months after originally returning the completed form, Plaintiff received a phone call from Hartford Insurance indicating Defendant Township had completed and returned their portion of the disability form.  Because of the treatment Plaintiff received from Defendants, she went without pay for over eleven (11) months.  This caused her to file for heating assistance through the Low-Income Home Energy Assistance Program (LIHEAP) and receive food stamps from February of 2014 through August of 2014.  On December 29, 2014, Plaintiff returned to work and learned that on or around January 22, 2015, Defendant Avvisato had left a copy of her Workers' Compensation ruling, which contained sensitive medical information, on a desk in the police department for the other officers to read.

On March 13, 2015, Plaintiff filed a Complaint against the Township, former police

6

chief Robert Avvisato, township supervisors Joseph Adams and Steven Rinaldi, and the township administrator John Bonita, alleging sex discrimination, civil rights conspiracies, and IIED claims. (Doc. 1.)  On May 22, 2015, the BART Defendants filed a partial motion to dismiss Plaintiff's Complaint. (Doc. 15.)  Specifically, these defendants seek dismissal of (1) Plaintiff's punitive damages claim against Pittston Township in Count I of the Complaint; (2) all Section 1985(3) conspiracy claims against Pittston Township in Count III of the Complaint; and (3) all IIED claims against all of the BART Defendants in Count IV of the Complaint.  These defendants also request that all factual averments prior to March 13, 2013, alleged in support of Plaintiff's claims under Counts II, III, and IV, be stricken as time-barred.  On June 4, 2015, Plaintiff filed her brief in opposition to the motion (Doc. 19) and on June 18, 2015, the BART Defendants filed their reply (Doc. 21).

On June 1, 2015, Defendant Robert Avvisato also filed a motion to dismiss Plaintiff's Complaint. (Doc. 18.)  He seeks dismissal on the grounds that (1) he is entitled to qualified immunity and (2) Plaintiff has failed to allege facts sufficient to state a claim.  On June 29, 2015, Plaintiff filed her brief in opposition. (Doc. 22.)  Defendant Avvisato did not file a reply brief.  Both motions to dismiss are now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *Id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.   However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).   Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).   As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits

attached to the complaint, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Plaintiff's Complaint asserts claims against all Defendants for (1) sex discrimination in violation of Plaintiff's Fourteenth Amendment rights pursuant to Section 1983 (Count I); (2) conspiracy to violate Plaintiff's equal protection rights pursuant to Section 1983 (Count II); (3) conspiracy to violate Plaintiff's equal protection rights pursuant to Section 1985(3) (Count III); and (4) IIED.  Each of these claims will be addressed in turn below.

### A.    Section 1983 Sex Discrimination

In Count I of her Complaint, Plaintiff alleges sex discrimination claims in violation of her Fourteenth Amendment Equal Protection rights pursuant to Section 1983 against all Defendants and seeks damages, including punitive damages.  As a preliminary matter, the BART Defendants have only moved to dismiss the punitive damages claim against Pittston Township with respect to this count.  Plaintiff has conceded that punitive damages for Section 1983 cases are not available against municipalities like Pittston Township.  (Doc. 19, Pl. Opp., at 9.)  *See City of Newport v. Fact Concerts, Inc.*, 453

U.S. 247, 271 (1981) (holding that municipalities are immune from punitive damages under Section 1983).  Accordingly, Plaintiff's claim for punitive damages against Defendant Pittston Township will be dismissed with prejudice.

Defendant Avvisato seeks dismissal of this count on the grounds that (1) the facts alleged in Plaintiff's Complaint fail to adequately state a claim for sex discrimination and (2) Plaintiff is not entitled to punitive damages.  I will proceed to discuss each of these arguments in turn.

### 1.    Failure to State a Claim Against Avvisato

In order to prevail on a Section 1983 sex discrimination claim, Plaintiff must show that she was "subjected to purposeful discrimination" because of her sex.  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Batson v. Kentucky*, 476 U.S. 79, 93 (1986).  A plaintiff alleging sex-based discrimination must demonstrate that she was treated differently from other similarly situated individuals and that this disparate treatment was based on her sex.  *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990); *Shkedi v. City of Scranton*, No. 3:cv-14-2069, 2015 WL 1505660, at *10 (M.D. Pa. Apr. 1, 2015) (explaining that "a general allegation that plaintiff has been treated differently from others similarly situated will suffice") (citation and internal quotation marks omitted).

Here, Plaintiff has adequately stated a claim for Section 1983 sex discrimination against Defendant Avvisato.  First, Plaintiff alleges that Defendant Avvisato discriminated against her by directing inflammatory comments toward her and berating her in front of other officers.  (Doc. 1, Compl. ¶¶ 23-29, 34, 78-82, 95, 97.)  For example, Defendant Avvisato said to her and others that he was hired as Chief of Police over her because he was more experienced, and told her that she was not ready to be Sergeant

because she could not handle the pressure and stress.  He also threatened to demote her and then did so, stripping her of her authority as a Sergeant.  Second, he treated other similarly situated male employees more favorably than he treated her, such as by disciplining her for violating an arbitrary uniform policy that he implemented but not disciplining a similarly situated male who also violated the policy.  (*Id.* ¶¶ 61-70.)  In addition, Defendant Avvisato gave her less time to comply with the new uniform policy than he gave for other male officers.  (*Id.* ¶¶ 64-66.)  Third, he refused to take any disciplinary action against a male patrolman who physically accosted Plaintiff with the door of a police cruiser.  (*Id.* ¶¶ 35-58.)  These allegations are sufficient for Plaintiff to survive a motion to dismiss.  *See Heneghan v. Northampton Cmty. Coll.*, No. 09-04979, 2010 WL 2730638, at *7 (E.D. Pa. July 8, 2010) (denying motion to dismiss sex discrimination claim based on similar allegations).

The cases cited by Defendant Avvisato do not draw me to a different conclusion.  First, Defendant Avvisato cites to *Oates v. District of Columbia*, 824 F.2d 87, 90 (D.C. Cir. 1987), where the court held that the defendants did not violate the plaintiff's constitutional rights because their actions were founded upon non-discriminatory bases. *Id.* at 93.  However, *Oates* is inapposite.  In *Oates*, a female physical education instructor sued the District of Columbia alleging that their revocation of her appointment to become head football coach at a local high school was based on sex discrimination. *Id.* at 88.  The D.C. Circuit affirmed judgment for the district because the district's motivation in vacating the plaintiff's appointment to head football coach at a local high school was based on "a legitimate, nondiscriminatory reason," *i.e.*, to honor a previous commitment made to an old coach.  *Id.*

However, unlike in *Oates*, here, Defendant Avvisato has proffered no legitimate, non-discriminatory reasons for his conduct.  Additionally, *Oates* was not decided at the

motion to dismiss stage, but after the parties had already engaged in discovery and after the court had held a two-day evidentiary hearing.  *Id.* at 88-90.  Therefore, Defendant's reliance on *Oates* is misguided.

Defendant Avvisato also cites to *Long v. Bd. of Educ.*, 812 F. Supp. 525, 532 (E.D. Pa. 1993), *disapproved of on other grounds*, *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 475 (3d Cir. 2001), where the court denied the plaintiff's claims on the ground that there existed "no genuine issue of material fact that Plaintiff was subjected to purposeful discrimination or treatment different from others similarly situated based upon her sex or her race."  *Id.* at 532.  However, the court in *Long* was addressing a motion for summary judgment, therefore unlike in the case here, the parties in *Long* had already engaged in discovery.  Therefore, *Long* is similarly inapposite.  Accordingly, Defendant Avvisato's motion to dismiss Plaintiff's Section 1983 sex discrimination claim is premature and will be denied.

### 2.    Punitive Damages Against Avvisato

Here, Plaintiff seeks punitive damages against all of the individual Defendants in their individual capacities.  However, only Defendant Avvisato seeks dismissal of Plaintiff's punitive damages claim.

Punitive damages are not available against governmental employees in their official capacities, since such a suit would in actuality be a suit against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  However, punitive damages are available against governmental employees acting in their individual capacities.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 254 (1981); *Rivera v. James*, No. 03-4631, 2004 WL 1784351, at *1 n.1 (E.D. Pa. 2004) (citation omitted) (explaining that punitive damages in Section 1983 cases are available where defendants have acted with a "reckless or callous disregard of, or indifference to, the rights or safety of others").  A plaintiff may be entitled to punitive damages under Section 1983 when "the

defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (citing *Wade* and articulating this same standard).  In support of dismissal, Defendant Avvisato asserts that nothing in the Complaint rises to the level of reckless or callous disregard of Plaintiff's rights by Defendant Avvisato.

I disagree.  Here, Plaintiff has alleged a pattern of harassment and discriminatory treatment by Defendant Avvisato from the time he was hired until Plaintiff could no longer endure it and was medically excused from work.  Plaintiff cites to specific forms of discrimination she encountered by Defendant Avvisato, including but not limited to:  (1) not taking any disciplinary action against a male patrolman after he physically accosted her with the door of a police cruiser, (2) issuing arbitrary uniform demands for which he gave her less time to comply with than other male officers, (3) disciplining her for violating the new uniform policy but not another male officer who violated the policy, and (4) directing inflammatory comments toward her.  Furthermore, she has presented specific allegations that he conspired with the co-defendants to deprive her of her constitutional rights.  She argues that Defendants' conduct was reckless or outrageous and motivated by evil intent.  Because the issue of whether Defendants' conduct was so reckless or outrageous as to justify punitive damages is a factual issue that requires discovery, I will deny Defendant Avvisato's motion to dismiss Plaintiff's punitive damages claim.  *See, e.g.*, *Young v. Westfall*, No. 4:06-cv-2325, 2007 WL 675182, at *2 (M.D. Pa. Mar. 1, 2007) ("Although the facts may later prove at most that defendants were merely negligent, discovery is necessary to help make this determination.  Dismissing plaintiffs' punitive damages claim now at the pleading stage would be premature."); *Domm v. Jersey Printing Co.*, 871 F. Supp. 732, 739 (D.N.J. 1994) (denying motion for summary judgment on punitive damages as premature because "issue of punitive damages is a fact question which should be decided by a jury"); *see also Keenan, et al. v. City of Phila., et al.*, 983 F.2d 459, 465-70 (3d Cir. 1992) (affirming punitive damages award in

female plaintiff's sex discrimination claim against a Captain in the Philadelphia police department, where her allegations included that (1) she was prohibited from going on a trip to Atlantic City to retrieve a weapon and talk to a witness, (2) she was sent home on a Saturday after she came to the department to question an informant with regard to several unsolved murder cases, and (3) she was prohibited from transporting a male prisoner for the purpose of interviewing and debriefing the prisoner).

### 3.    Qualified Immunity for Avvisato

Defendant Avvisato also seeks dismissal of Plaintiff's claims on the ground that he is entitled to qualified immunity.  He is the only defendant that has moved to dismiss Plaintiff's claims on this ground.  The defense of qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The standard for applying qualified immunity is an objective one.  In *Hunter v. Bryant*, 502 U.S. 224 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* at 229 (citation and internal quotation marks omitted).

The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).  In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a "clearly established" right. *Anderson*, 483 U.S. at 635.  A plaintiff does not fulfill this requirement simply by alleging that the defendant violated some constitutional provision. *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).  Rather, "the right the official is alleged to have violated must have been 'clearly established' in a *more particularized,* and hence *more relevant*, sense." *McLaughlin*, 271 F.3d at 571 (quoting *Anderson*, 483 U.S. at 640).  As the Third Circuit has explained, "clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right.

14

*McLaughlin*, 271 F.3d at 571.  A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent.  *Shea v. Smith*, 966 F.2d 127, 130 (3d Cir. 1992).

In determining whether an official violated a clearly established right, the Court first must ask whether a plaintiff has asserted a violation of a constitutional right at all, and, if so, then go on to examine whether the right was "clearly established." *McLaughlin*, 271 F.3d at 571 (citations omitted).  The Third Circuit has interpreted the phrase "clearly established" to mean "some but not precise factual correspondence" between relevant precedents and the conduct at issue, and that "[a]lthough officials need not predic[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." *Id.* (citations omitted).   The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *Id.* (citations omitted).

Here, Defendant Avvisato argues that he is entitled to qualified immunity on both Plaintiff's Section 1983 sex discrimination claim and Plaintiff's Section 1985(3) conspiracy to discriminate on the basis of sex claim.  Specifically, he argues the Complaint fails to plead sufficient, individualized facts regarding his conduct that would support a finding of liability based upon the law regarding the Fourteenth Amendment or any other allegations raised in the Complaint.  He argues that taking the allegations in the Complaint as true, Plaintiff fails to allege sufficient facts that would show that a constitutional violation occurred, or that if one did occur, that Defendant's actions were objectively unreasonable in light of current legal standards.

I disagree.  Taking the allegations in the Complaint as true, Defendant Avvisato harassed her and treated her differently than other similarly situated male employees. For example, Plaintiff alleges that in March of 2013, Defendant Avvisato implemented an arbitrary uniform policy where only the Chief of Police could wear gold insignia on his uniform and all other ranking officers had to wear silver.  Plaintiff was the only ranking

officer in the department at the time. Defendant Avvisato gave everyone in the department thirty (30) days to comply with this change, but only gave ranking officers (Plaintiff was the only ranking officer at the time) fifteen (15) days to comply.  Plaintiff was subsequently written up by Defendant Avvisato for not complying with this policy, even though a male patrolman who also violated this policy was not written up.  Plaintiff also alleges that Defendant Avvisato would harass and berate her, and once walked toward her "in an aggressive manner" while berating her.  Taking these allegations as true, Defendant Avvisato engaged in a campaign of harassment based on Plaintiff's sex. This is sufficient to allege that a constitutional violation occurred.

Additionally, Defendant Avvisato's actions were objectively unreasonable in light of current legal standards, which clearly established that intentional discrimination on the basis of sex is prohibited.  For example, in *Hynson By & Through Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026 (3d Cir. 1988), the Third Circuit vacated a district court order granting the defendant police officers' motion for summary judgment on a due process claim based on qualified immunity.  *Id.* at 1027.  Specifically, the Third Circuit held that a police officer loses qualified immunity to a claim that a facially neutral policy is executed in a discriminatory manner where a reasonable officer would know that the policy has a discriminatory impact on women, that bias against women was a motivating factor behind the adoption of the policy, and that there is no important public interest served by the adoption of the policy.  *Id.*  Here, taking Plaintiff's allegations as true, Defendant Avvisato implemented a facially neutral policy that was executed in a discriminatory manner, where he knew that the policy would have a discriminatory impact on Plaintiff, the only woman; that bias against her as a woman was a motivating factor behind the adoption of the policy, and that there is no important public interest served by the adoption of the policy.

As for Plaintiff's Section 1985(3) conspiracy to discriminate claim, which requires an agreement between "two or more persons" to deprive an individual of his or her civil rights, 42 U.S.C. § 1985(3), Plaintiff has alleged that Defendant Avvisato was hired by

the Defendant Township for the purpose of harassing her until she quit her job or could be lawfully terminated, and that Defendant Avvisato would have meetings with the other individual Defendants, all of whom would urge him to fire Plaintiff.  Taking all of these allegations as true, Plaintiff has sufficiently alleged constitutional violations occurred and that Defendant Avvisato's were objectively unreasonable in light of current legal standards, which clearly establish that intentional discrimination on the basis of sex and conspiracies to discriminate on the basis of sex are unlawful.  Accordingly, Defendant Avvisato's motion to dismiss on the basis of qualified immunity is denied.

**B.      Conspiracy**

   **1.      Plaintiff's Factual Allegations Prior to March 13, 2013**

As a preliminary matter, the BART Defendants argue that all factual allegations of overt acts prior to March 13, 2013, made by Plaintiff in support of her civil rights conspiracy claims and IIED claim must be stricken as time-barred.  First, civil rights conspiracy claims, whether based on Section 1983 or Section 1985, have a two-year statute of limitations.  *Omar Sharif Little v. City & Cty. of Phila.*, No. 2:07-cv-05361, 2008 WL 2704579, at *3 (E.D. Pa. July 3, 2008) (citation omitted).  The filing deadline for a civil rights conspiracy claim "runs from each overt act causing damage."  *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984).  Under Pennsylvania law, the statute of limitations for IIED claims is two (2) years from the date of accrual.  *Vaughn v. Pathmark Stores, Inc.*, No. 99-0018, 1999 WL 299576, at *3 (E.D. Pa. May 10, 1999).

Here, Plaintiff filed her Complaint on March 13, 2015.  Defendants argue that all of Plaintiff's allegations of overt acts prior to March 13, 2013, must be stricken with respect to her civil rights conspiracy and IIED claims.  This includes but is not limited to Plaintiff's claims set forth in paragraphs 19-20, 24-31, 35-37, 61-66, 72-73, and 173-175.

However, the limitations period for Plaintiff's conspiracy claim does not begin to run until the time when she knows or has reason to know of the injury that is the basis for her action.  *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).  Here, Plaintiff did not exhibit physical injuries until April 10, 2013, which was the date she had

to leave work after being berated by Defendant Avvisato.  Plaintiff's Workers'

Compensation Claim Petition also averred that the work-related injury occurred on April

10, 2013.  Up to that point, Plaintiff had no idea that the conduct being directed toward

her was the intentional result of Defendants conspiring against her.  It was not until

Plaintiff's conversation in March of 2014 with Patrolman Houghtlin that she became

aware of this.  Because Plaintiff filed her Complaint on March 13, 2015, which was within

two (2) years from the date she became aware of the injury that is the basis for her

action, Defendants' request to strike all allegations of overt acts prior to March 13, 2013

as untimely will be denied.  I need not consider Plaintiff's remaining arguments regarding

equitable tolling and the continuing violations doctrine made in response to Defendants'

request to strike these allegations as untimely.

> ## 2.    Section 1983 Conspiracy

In Count II of her Complaint, Plaintiff alleges conspiracy claims against

Defendants Avvisato, Rinaldi, Bonita, and Pittston Township for conspiring and entering

into an agreement to deprive Plaintiff of her right to equal protection of the law in

violation of Section 1983.  To state a section 1983 conspiracy claim, a plaintiff must

allege (1) the existence of a conspiracy involving state action and (2) a deprivation of

civil rights in furtherance of the conspiracy by a party to that conspiracy.  *Adickes v. S.*

*H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Rosembert v. Borough of East Lansdowne*,

14 F. Supp. 3d 631, 647 (E.D. Pa. 2014).  A plaintiff must allege that there was an

agreement or meeting of the minds to violate her constitutional rights.  *Startzell v. City of*

*Phila.*, 533 F.3d 183, 205 (3d Cir. 2008).  Only allegations of conspiracy that are

particularized, such as those addressing the period of the conspiracy, the object of the

conspiracy, and certain other actions of the alleged conspirators taken to achieve that

purpose will be deemed sufficient.  *Rose v. Bartle*, 871 F.2d 331, 365-66 (3d Cir. 1989).

However, if the lack of specificity results from the defendant's control of relevant

information, the court may allow the action to proceed to a reasonable amount of

discovery to help the plaintiff make the necessary showing to prove her case.  *Freedman*

*v. City of Allentown, Pa.*, 853 F.2d 1111, 1114 (3d Cir. 1988); *Labalokie v. Capital Area Intermediate Unit*, 926 F. Supp. 503, 509 (M.D. Pa. 1996).

Defendant Avvisato is the only defendant that has moved to dismiss this claim. He argues that Plaintiff has failed to state with specificity that he in any way "conspired" to violate Plaintiff's rights and that to the extent she is alleging that co-Defendants hired him with the intention of violating her rights, there is no factual allegation that Defendant Avvisato was involved in any such "agreement."

I disagree. I find that Plaintiff has satisfied the above criteria to state a Section 1983 conspiracy claim. First, she has alleged a conspiracy involving state action, by nature of the parties to this lawsuit. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 151 (1970). Second, she has alleged a deprivation of her civil rights based on the actions of the conspirators. She includes several factual allegations detailing how Defendant Avvisato harassed her and treated her differently from similarly situated males, such as implementing an arbitrary uniform policy that applied only to her, the only female, and disciplining her for violating the policy, even though a similarly situated male was not disciplined for violating the policy. It can be inferred from this conduct that Defendant Avvisato was engaging in this harassing behavior toward Plaintiff as part of the conspiracy. Further, she alleges there was a meeting of the minds between Defendant Avvisato and the other conspirators to deprive her of her constitutional rights. (*See, e.g.*, Doc. 1, Compl. ¶¶ 173-79, 204.) Plaintiff alleges that she was contacted by Patrolman Todd Houghtlin in March of 2014, after a conversation he had with Defendant Avvisato at the Pittston Township Police Department. (*Id.* ¶¶ 171-72.) During the course of this conversation, Defendant Avvisato stated that he was hired by the co-defendants to harass Plaintiff until she quit her job or could be lawfully fired. (*Id.* ¶¶ 173.) Furthermore, he informed Patrolman Houghtlin that he would have meetings with the co-defendants and they would all urge him to fire her. (*Id.* ¶ 174.) Based on the allegations regarding the circumstances surrounding Defendant Avvisato's hiring and his subsequent meetings with the co-defendants, it is plausible that Defendant Avvisato's

19

discriminatory treatment of Plaintiff was motivated by the reason for his hiring.

Therefore, Plaintiff has adequately pled facts sufficient to put Defendant Avvisato on

notice of the general period of the conspiracy, the object of the conspiracy, and the

alleged conduct taken in furtherance of the conspiracy. *See Marchese v. Umstead*, 110

F. Supp. 2d 361, 371 (E.D. Pa. 2000) (rejecting the argument that the conspiracy charge

lacked the requisite specificity and finding that the "plaintiff has pled facts sufficient to

put the defendants on notice of the general period of the conspiracy, the object of the

conspiracy and the alleged conduct taken in furtherance of the conspiracy").

  **3.    Section 1985(3) Conspiracy**

  In Count III of her Complaint, Plaintiff alleges that all Defendants violated Section

1985(3) by conspiring and entering into an agreement to deprive Plaintiff of her

Fourteenth Amendment right to equal protection of the law.  To state a claim under

Section 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving,

either directly or indirectly, any person or class of persons of the equal protection of the

laws or of equal privileges and immunities under the laws; and (3) an act in furtherance

of the conspiracy (4) whereby a person is injured in his person or property or deprived of

any right or privilege of a citizen of the United States.  *Farber v. City of Paterson*, 440

F.3d 131, 134 (3d Cir. 2006) (citations omitted).  Although Section 1985(3) applies to

private conspiracies, it "was not intended to provide a federal remedy for 'all tortious,

conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'"

*Id.* at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).  Unlike a

Section 1983 conspiracy claim, Section 1985(3) requires that the conspiracy be

motivated by invidious discrimination.  *Roach v. Marrow*, No. 3:cv-08-1136, 2009 WL

3103781, at *6 (M.D. Pa. Sept. 24, 2009); *see also Perano v. Twp. of Tilden*, 423 F.

App'x 234, 239 (3d Cir. 2011) (citation omitted).  *Cf. Great Am. Fed. Sav. & Loan Ass'n

v. Novotny*, 442 U.S. 366, 378 (1979) (explaining that "a plaintiff in an action under §

1985(3) must prove both a conspiracy and a group animus that Title VII does not

require").  This requires a plaintiff to allege "some racial, or perhaps otherwise

20

discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102.

To survive a motion to dismiss, Plaintiff must plead facts that support allegations of a conspiracy. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.), *cert. denied*, 409 U.S. 1042 (1972). These allegations must include a description of the membership, formulation, and purpose of the alleged conspiracy. *Armstrong v. Sch. Dist. Of Phila.*, 597 F. Supp. 1309, 1313 (E.D. Pa. 1984) (citation omitted). Only Defendant Pittston Township and Defendant Avvisato have moved to dismiss Plaintiff's Section 1985(3) conspiracy claim. I will address each of their arguments in turn.

### a. Pittston Township

Defendant Pittston Township seeks dismissal of Plaintiff's Section 1985(3) claim on the ground that townships are incapable of forming a mens rea sufficient to satisfy the animus or requirement of discriminatory motive under Section 1985(3). In support of this argument, Pittston Township relies on *Scott v. Bristol*, No. 90-1412, 1990 WL 178556 (E.D. Pa. Nov. 14, 1990), which held that municipalities cannot conspire with employees under Section 1985(3), regardless of whether the employees are being sued in their official or individual capacities. *Id.* at *8. The court held that under the intracorporate conspiracy doctrine, a Section 1985(3) conspiracy cannot be maintained between a municipality and its employees in their official capacities because they are part of the same entity, and therefore a municipality cannot conspire with itself. *Id.* at *6-*7; *see also Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (quoting *Scott* for this proposition); *Tomino v. City of Bethlehem*, No. 08-cv-06018, 2010 WL 1348536, at *16 (E.D. Pa. Mar. 31, 2010) (quoting *Scott* for this proposition); *Section 1985 cases*, 3 Emp. Discrim. Coord. Analysis of Fed. Law § 136:52 (citing *Scott* for this proposition). Accordingly, there can be no claim of a Section 1985(3) conspiracy between Pittston Township and the individual defendants in their official capacities.[2]

---

[2] Although the Third Circuit has not yet addressed this issue, it has expressed "doubt" as to "whether township officials, acting within their official capacities, may enter into an actionable conspiracy with the municipality." *Gregory v. Chehi*,

The court in *Scott* also held that a Section 1985(3) conspiracy may not be maintained against a municipality and its employees in their ***individual*** capacities because "municipalities are not capable of possessing the invidious discriminatory animus or motive required to successfully maintain an action under § 1985(3)." *Scott*, 1990 WL 178556, at *6, *8.  The court relied on *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), where the Supreme Court held that punitive damages may not be assessed against a municipality for the malicious and willful misconduct of employees, in part because "[a] municipality . . . can have no malice independent of its officials." *Id.* at 267; *see also Bonsall Village, Inc. v. Patterson*, No. 90-045, 1990 WL 139383, at *5-*6 (E.D. Pa. Sept. 19, 1990) (holding that a municipality is incapable of forming the *mens rea* or criminal intent necessary for racketeering charges); *Albanese v. City Fed. Sav. & Loan Ass'n*, 710 F. Supp. 563, 567-68 (D.N.J. 1989) (holding the same).  Relying on these cases, the court in *Scott* distinguished municipalities from ordinary corporations, concluding that "unlike an ordinary corporation, a municipal corporation is determined to be incapable of forming the requisite mens rea." *Scott*, 1990 WL 178556, at *8 ("[T]he criminal intent of the agent of a municipal corporation cannot be imputed to the municipal corporation itself because the retribution for such wrong should not be visited upon the shoulders of blameless or unknowing taxpayers.") (citation and internal quotation marks omitted).

In response, Plaintiff argues that for purposes of Section 1983, the Supreme Court has held that a city was a "person" and could be held liable for an official policy, practice, or custom causally linked to an employee's conduct that resulted in the injury to the plaintiff.  (Doc. 19, at 9-10 (citing *Monnell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)).  Based on the rationale in *Monnell*, the Second Circuit and other district courts have held that a city or local body is a "person" under Section 1985.  *See Owens v.*

843 F.2d 111, 118 n.4 (3d Cir. 1988) ("We further note that some doubt exists whether township officials, acting within their official capacities, may enter into an actionable conspiracy with their municipality.") (citations omitted).

22

*Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Eiland v. Hardesty*, 564 F. Supp. 930, 935 (N.D. Ill. 1982); *Stahos v. Bowden*, 514 F. Supp. 1288, 1293 (D. Mass. 1981); *Gant v. Aliquippa Borough*, 612 F. Supp. 1139 (W.D. Pa. 1985)).  Relying on these cases, Plaintiff argues that Pittston Township is a "person" under Section 1985 and is therefore capable of forming a mens rea to satisfy the discriminatory animus requirement of Section 1985(3).

However, none of these cases cited by Plaintiff stating that a municipality is a "person" under Section 1985(3) address the more specific question of whether a municipality is capable of forming the mens rea sufficient to satisfy the discriminatory animus requirement of Section 1985(3).  Critically, Plaintiff's cases rely on the fact that municipalities are "persons" under Section 1983, and therefore assume that municipalities are also "persons" under Section 1985.  This ignores the unique "discriminatory animus" requirement of Section 1985 that is not found in Section 1983. Only the court in *Scott* addressed this issue, and concluded that a municipality is *not* capable of the requisite mens rea sufficient to sustain a Section 1985(3) claim.  *Scott*, 1990 WL 178556, at \*6, \*8 ("[P]ublic officials cannot be held liable for conspiring with the city as municipalities are incapable of forming the requisite racial animus or mental state required to maintain a § 1985(3) claim.").  Therefore, the issue of whether a municipality is a "person" under Section 1983 is not dispositive of whether a municipality can form the requisite mens rea for a Section 1985(3) claim.

For example, in *Owens v. Haas*, the court briefly stated that because "a local body is a 'person' for the purposes of § 1983, we ***assume*** that the same definition of 'person' would apply to § 1985, which allows damages whenever two or more 'persons' conspire to violate the civil rights of another."  *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979) (emphasis added).  However, because a county cannot be held liable on a *respondeat superior* theory and the complaint in *Owens* did not allege an "official custom or policy of the county" resulting in the conspiracy, the court did not have to address the more narrow issue of whether the discriminatory animus element of a Section 1985(3)

23

claim, which is not required in a Section 1983 claim, could be satisfied if the defendant was a municipality.  It was for this same reason, that the plaintiff failed to allege an official custom of policy of the defendant, that the court in *Eiland* also did not reach this issue.  *Eiland v. Hardesty*, 564 F. Supp. 930, 935 (1982).  Plaintiff's remaining cases similarly fail to address this issue.  *See Stathos v. Bowden*, 514 F. Supp. 1288 (1981) (D. Mass. 1981); *Gant v. Aliquippa Borough*, 612 F. Supp. 1139 (W.D. Pa. 1985).[3]

The only court that addressed this *mens rea* issue was the court in *Scott*, where the court concluded that municipalities are "incapable of forming a *mens rea* sufficient to satisfy the racial animus or requirement of racially discriminatory motive under § 1985(3)."  *Scott*, 1990 WL 178556, at *8.  This is consistent with Supreme Court precedent, which has held that municipalities "can have no malice independent of its officials."  *City of Newport*, 453 U.S. at 267.  Therefore, because a municipality is incapable of possessing the invidious discriminatory animus required to sustain an action under Section 1985(3), there can be no conspiracy between Defendant Township and the remaining individual defendants in their official capacities.  Plaintiff's Section 1985(3) conspiracy claim against Defendant Township will be dismissed.

### b.    Defendant Avvisato

Defendant Avvisato also seeks dismissal of Plaintiff's Section 1985(3) conspiracy claim.  He seeks dismissal on the grounds that (1) Plaintiff has failed to allege facts sufficient to satisfy the discriminatory animus requirement and (2) Plaintiff has failed to allege facts showing a conspiracy with the requisite particularity, noting that at a minimum, a plaintiff must "identify with some particularity the conduct violating his rights, the time and place of the actions, and the specific individuals involved."  *Spence v. Thompson*, No. 12-cv-857, 2013 WL 1180765, at *8 (W.D. Pa. Jan. 4, 2013); *see also Scott*, 1990 WL 178556, at *5 (dismissing Section 1985(3) claim because the

---

[3]     Plaintiff also cites to *Rackin v. Univ. of Pa.*, 386 F. Supp. 992 (E.D. Pa. 1974).  However, *Rackin* did not involve a municipality, and therefore does not address the issue at hand.

"allegations do not specify the overt acts committed by the other purported co-conspirators in furtherance of the conspiracy").  Defendant Avvisato argues that Plaintiff's "sweeping" allegations that a conspiracy existed and that the Defendants generally conspired to violate her constitutional rights because of her sex fail to allege a conspiracy with the requisite particularity.

Defendant Avvisato's motion will be denied.  As explained above, Plaintiff has alleged that Defendant Avvisato was hired by Defendant Township for the purpose of harassing her until she quit her job or could be lawfully terminated, and that Defendant Avvisato would have meetings with the other individual Defendants, all of whom would urge him to fire Plaintiff.  She also alleges with specificity several instances in which he harassed her, berated her, and treated her differently than similarly situated males, such as implementing an arbitrary uniform policy that had a discriminatory effect on her and for which she was disciplined for violating, yet another male employee was not disciplined for violating.  These instances of harassment and discriminatory treatment are evidence that Defendant Avvisato participated in and furthered the conspiracy. Accordingly, Defendant Avvisato's motion will be denied.

## C.    Intentional Infliction of Emotional Distress

In Count IV of her Complaint, Plaintiff asserts an IIED claim against all Defendants, alleging that they "intentionally and outrageously" caused her to suffer from severe emotional distress by depriving her of her Fourteenth Amendment rights by way of discrimination and a hostile work environment, with the hope that she would quit or be fired.  All Defendants have moved to dismiss this claim.

### 1.    Pittston Township

Defendant Pittston Township seeks dismissal of Plaintiff's IIED claim because IIED is not a negligent act exposing the township to liability as an exception to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. § 8541, *et seq.  See Wakshul v. City of Phila.*, 998 F. Supp. 585 (E.D. Pa. 1998) (IIED does not fall within enumerated exceptions to immunity); *Weaver v. Franklin Cnty.*, 918

A.2d 194, 200 (Pa. Commw. Ct. 2007) (IIED is not a negligent act exposing the county defendant to liability).  Plaintiff concedes that a municipality is immune from liability for IIED.  (Doc. 19, at 11.)  Accordingly, Plaintiff's IIED claim against Defendant Pittston Township will be dismissed with prejudice.

> ### 2.    Failure to State a Claim

To state a cognizable IIED claim, a plaintiff must plead that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.  *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1998); *Wisniewski v. Johns-Mansville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987); *Mulgrew v. Sears Roebuck & Co.*, 868 F. Supp. 98, 103 (E.D. Pa. 1994).  To meet this high threshold, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible grounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998); *see also Mulgrew*, 868 F. Supp. at 103 (explaining that the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society").  Conduct arising in the employment context will rarely rise to the level of outrageousness necessary to support an IIED claim.  *Hampton v. Tokai Fin. Servs., Inc.*, No. 98-5074, 1999 WL 83934, at *3 (E.D. Pa. Feb. 18, 1999); *see also Cox*, 861 F.2d at 395 ("[I]t must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.").  In addition to requiring that a plaintiff establish that the conduct complained of was outrageous, "the Pennsylvania Supreme Court has required that the plaintiff present competent medical evidence to support the claim."  *Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (Pa. Super. 1993).

Plaintiff has failed to allege conduct rising to the level of outrageousness to support an IIED claim.  Even accepting Plaintiff's allegations as true, that Defendants Adams, Rinaldi, and Bonita appointed Defendant Avvisato as Chief of Police for the

purpose of harassing Plaintiff, these allegations fail to adequately allege an IIED claim. Plaintiff's allegations that Defendant Bonita told her to fill out the wrong disability paperwork similarly fall short of the requisite conduct to establish such a claim.  None of Plaintiff's allegations regarding conduct by any of the defendants rise to the level of outrageousness needed to support an IIED claim.  Accordingly, Plaintiff's IIED claims against all Defendants will be dismissed with prejudice.

Plaintiff's reliance on *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307 (M.D. Pa. 1988) is misguided.  *Bowersox* was a sexual harassment case where the plaintiff's supervisor made sexual advances for several years, including but not limited to, making statements concerning his sexual virility, outings at strip clubs, and sexual performance of other female employees.  The supervisor also engaged in retaliatory actions such as withholding information that the plaintiff needed to perform her job and prohibiting her from talking on the phone.  He also invited her to watch him swim nude and to go skiing with him, and also displayed sexually explicit posters.  The allegations in *Bowersox* are nothing like Plaintiff's allegations here, where Defendants implemented arbitrary uniform policies and made non-sexual but hostile comments to get her to quit.  Accordingly, Plaintiff's IIED claim will be dismissed.

## IV. Conclusion

For the above stated reasons, the BART Defendants' Partial Motion to Dismiss will be granted with respect to (1) the punitive damages claim against Pittston Township and (2) the IIED claim against all of the BART Defendants.  However, the motion will be denied with respect to its request to strike all factual allegations prior to March 13, 2013.  Defendant Avvisato's Motion to Dismiss will be granted with respect to Plaintiff's IIED claim, but denied in all other respects.

An appropriate order follows.


August 17, 2016                                        /s/ A. Richard Caputo
Date                                                          A. Richard Caputo
                                                                  United States District Judge

27